James D. Curran, Esq.       SBN 126586
Amy K. Thomas, Esq.       SBN 202876
Wolkin · Curran, LLP
555 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:     (415) 982-9390
Facsimile:      (415) 982-4328
E-mails:       jcurran@wolkincurran.com
               athomas@wolkincurran.com

Attorneys for Plaintiff
LIBERTY MUTUAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts corporation,

    Plaintiff,

    v.

UPA CALIFORNIA, *et al.*,

    Defendants.

AND RELATED CROSS-CLAIMS

Case No. CV 08-0611 BZ

**[~~PROPOSED~~] ORDER FOR FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

    Counsel for Plaintiff Liberty Mutual Insurance Company (**"Plaintiff"**), and counsel for Defendants UPA Group, L.C., Amako Resort Construction (U.S.), Inc., and Amir Etamadi (collectively, **"Appearing Defendants"**), appeared before this Court on August 11, 2008, for purposes of a Case Management Conference. During said Conference, counsel for Plaintiff and counsel for Appearing Defendants, on behalf of their respective clients, did agree and stipulate, on the record, that Plaintiff should be permitted to file a first amended complaint, to reflect the recent dismissal of certain defendants.

///

///

1    In light of the stipulation of all parties appearing to date, and in light of the

2   representations of Plaintiff's counsel regarding the content of, and the basis for filing an

3   amended pleading, and good cause appearing, it is the Order of this Court that Plaintiff's

4   First Amended Complaint, as attached here, may be filed, and shall be deemed filed and

5   served concurrently with the filing of this Order.

6       **IT IS SO ORDERED.**

7

8       The Hon. Bernard Zimmerman
        Magistrate Judge

9

10      *Appearing defendants*

11   *shall respond by Sept 11 2008*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.

James D. Curran, Esq.      SBN 126586
Amy K. Thomas, Esq.        SBN 202876
Wolkin · Curran, LLP
555 Montgomery Street, Suite 1100
San Francisco, California  94111
Telephone:      (415) 982-9390
Facsimile:      (415) 982-4328
E-mails:        jcurran@wolkincurran.com
                athomas@wolkincurran.com

Attorneys for Plaintiff
LIBERTY MUTUAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, <br><br> Plaintiff, <br><br> v. <br><br> UPA CALIFORNIA, a California general partnership, UPA GROUP, INC., a California corporation, UPCAL CONSTRUCTION, INC., a Utah corporation, UPA RESORT CONSTRUCTION L.C., a limited liability company, PRINCIPAL PARTNERS, L.C., a limited liability company, AMAKO (U.S.), INC., a corporation, AMAKO RESORT CONSTRUCTION (U.S.), INC., a Washington corporation, AMAKO RESORT CONSTRUCTION (CALIFORNIA), INC., a California corporation, AMAKO RESORT CONSTRUCTION, INC., a corporation, and AMIR ETEMADI, an individual, <br><br> Defendants. | Case No. CV 08-0611 BZ <br><br> **PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY'S FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) BREACH OF WRITTEN INDEMNITY AGREEMENT;** <br><br> **(2) SPECIFIC PERFORMANCE OF WRITTEN INDEMNITY AGREEMENT;** <br><br> **(3) INJUNCTIVE RELIEF;** <br><br> **(4) DECLARATORY RELIEF;** <br><br> **(5) *QUIA TIMET*; and** <br><br> **(6) BREACH OF COLLATERAL RETENTION AGREEMENT.** |

Plaintiff LIBERTY MUTUAL INSURANCE COMPANY ("**Liberty**") alleges the

following as its First Amended Complaint.

///

///

///

1.

1

**FEDERAL JURISDICTION AND VENUE**

2      1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

3   section 1332 because there is complete diversity of citizenship between Liberty and

4   Defendants, and the amount in controversy exceeds $75,000.00.

5      2.      Venue is proper in the Northern District of California, because a substantial

6   part of the events and omissions giving rise to Liberty's claims occurred in Alameda

7   County, California.

8

**PARTIES**

9      3.      Liberty is a corporation organized, incorporated and existing under the laws

10   of the State of Massachusetts, with its principal place of business in Massachusetts, and

11   Liberty is and was at all times mentioned herein qualified and authorized to transact

12   business in the State of California as a surety.

13      4.      Liberty is informed and believes, and thereon alleges, that Defendant UPA

14   CALIFORNIA was, at certain times relevant to the events giving rise to this action, a

15   general partnership organized and existing under the laws of the State of California, with its

16   principal place of business in Reno, Nevada, and doing business in the State of California as

17   a contractor.

18      5.      Liberty is informed and believes, and thereon alleges, that Defendant UPA

19   GROUP, INC. is a corporation organized and existing under the laws of the State of

20   California, with its principal place of business in Reno, Nevada, and doing business the State

21   of California as a contractor.  Liberty is further informed and believes, and thereon alleges,

22   that Defendant UPA Group, Inc. is the current name of Defendant Amako Resort

23   Construction (California), Inc., following and as a result of the filing of a corporate

24   amendment and name change with the California Secretary of State, and that Defendant

25   UPA Group, Inc. is the same as, and inseparable from, the corporate entity of Defendant

26   Amako Resort Construction (California), Inc.

27   ///

28   ///

2.

1       6.    Liberty is informed and believes, and thereon alleges, that Defendant UPCAL

2   CONSTRUCTION, INC. was or is a corporation organized and existing under the laws of

3   the State of Utah, with its principal place of business in Salt Lake City, Utah, and doing

4   business in the State of California as a contractor.

5       7.    Liberty is informed and believes, and thereon alleges, that Defendant UPA

6   RESORT CONSTRUCTION L.C. was or is a limited liability company, with its principal

7   place of business in Salt Lake City, Utah.  At this time, Liberty lacks sufficient information

8   or belief to identify the laws of the State under which said Defendant was or is organized,

9   except that Liberty believes and asserts that said Defendant was not organized in or under

10  the laws of the State of Massachusetts.

11      8.    Liberty is informed and believes, and thereon alleges, that Defendant

12  PRINCIPAL PARTNERS, L.C. was or is a limited liability company, with its principal

13  place of business in Salt Lake City, Utah.  At this time, Liberty lacks sufficient information

14  or belief to identify the laws of the State under which said Defendant was or is organized,

15  except that Liberty believes and asserts that said Defendant was not organized in or under

16  the laws of the State of Massachusetts.

17      9.    Liberty is informed and believes, and thereon alleges, that Defendant

18  AMAKO (U.S.), INC. was or is a corporation, organized and existing under the laws of the

19  State of Washington, with its principal place of business in the State of Colorado.

20      10.    Liberty is informed and believes, and thereon alleges, that Defendant

21  AMAKO RESORT CONSTRUCTION (U.S.), INC. is a corporation, organized and existing

22  under the laws of the State of Washington, with its principal place of business in the State of

23  Colorado or the State of Nevada, and doing business in the State of California as a

24  contractor.

25      11.    Liberty is informed and believes, and thereon alleges, that Defendant

26  AMAKO RESORT CONSTRUCTION (CALIFORNIA), INC. was or is a corporation,

27  organized and existing under the laws of the State of California, with its principal place of

28  business in the State of Colorado or the State of Nevada, and doing business in the State of

3.

1  California as a contractor.  Liberty is further informed and believes, and thereon alleges, that

2  Defendant Amako Resort Construction (California), Inc. is currently known as, and doing

3  business under the name UPA Group, Inc., following and as a result of the filing of a

4  corporate amendment and name change with the California Secretary of State, and that

5  Defendant Amako Resort Construction (California), Inc. is the same as, and inseparable

6  from, the corporate entity of Defendant UPA Group, Inc.

7          12.    Liberty is informed and believes, and thereon alleges, that Defendant

8  AMAKO RESORT CONSTRUCTION, INC. was or is a corporation, with its principal

9  place of business in the State of Nevada.  At this time, Liberty lacks sufficient information

10  or belief to identify the laws of the State under which said Defendant was or is organized,

11  except that Liberty believes and asserts that said Defendant was not organized in or under

12  the laws of the State of Massachusetts.

13          13.    Liberty is informed and believes, and thereon alleges, that Defendant AMIR

14  ETEMADI is an individual residing in the State of Colorado, and that said Defendant is, or

15  was at times relevant hereto, doing business in the State of California as a contractor.

16          14.    Defendants UPA CALIFORNIA, UPA GROUP, INC., UPCAL

17  CONSTRUCTION, INC., UPA RESORT CONSTRUCTION L.C., PRINCIPAL

18  PARTNERS, L.C., AMAKO (U.S.), Inc., AMAKO RESORT CONSTRUCTION (U.S.),

19  INC., AMAKO RESORT CONSTRUCTION (CALIFORNIA), INC., and AMIR

20  ETEMADI executed and are obligated under one or more written general agreements of

21  indemnity, and said Defendants are collectively referred to in this Complaint as

22  "**Contractual Indemnity Defendants**."

23          15.    Defendants AMAKO RESORT CONSTRUCTION, INC., and AMIR

24  ETEMADI, executed and are obligated under a written capital retention agreement, and said

25  Defendants are collectively referred to in this Complaint as "**Capital Retention**

26  **Defendants.**"

27          16.    As used herein, the term "**Defendants**" shall include each of the named

28  defendants.

4.

1    17.    Liberty is informed and believes and thereon alleges that, at all times

2    mentioned in this complaint, each of the Defendants was the agent, servant, employee,

3    representative, subsidiary, affiliate, partner, member, or associate of one or more of the other

4    Defendants, and all of the things alleged to have been done by Defendants were done in the

5    course and scope of that relationship and with the knowledge and consent of their principals,

6    employers, owners, superiors, affiliates, masters, parent corporations, partners, members,

7    associates, or representatives, except as is otherwise specifically alleged within this

8    Complaint.

9    ## GENERAL ALLEGATIONS

10    18.    Liberty and the Contractual Indemnity Defendants entered into one or more

11    written indemnity agreements, as partial consideration for Liberty's agreement to issue

12    bonds on behalf of Defendants UPA California, UPA Resort Construction L.C., and UPCAL

13    Construction, Inc., as well as affiliates and/or subsidiaries.

14    19.    One such written indemnity agreement was a document captioned as a

15    General Agreement of Indemnity ("**GAI**"), and executed on or about October 20, 2003.

16    That GAI was thereafter amended not less than three times to include the names of

17    additional indemnitors.  A true and complete copy of the GAI, with amendments, is attached

18    to this Complaint as Exhibit 1.

19    20.    The terms of the GAI are incorporated herein by this reference as though

20    fully set forth.  The GAI includes, but is not limited to, the following terms and provisions:

21    
22    
23    
24    
25    
26    
27    
28    

> INDEMNITY - The INDEMNITOR shall exonerate,
> indemnify and save harmless the SURETY from and against
> any and all loss, damage or expense (including, but not limited
> to, interest, costs and attorney's fees) which the SURETY shall
> at any time sustain or incur by reason of: the request to
> execute, procure, or deliver any BONDS; or the executing,
> procuring or delivering of any BONDS, whether already or
> hereafter executed; or the renewal or continuation thereof; or
> from making any investigation on account thereof; or any
> payment thereunder; or as a result of prosecuting or defending
> any action brought in connection therewith, obtaining a release
> therefrom, or recovering or attempting to recover any salvage
> in connection therewith; or by reason of the failure of the
> INDEMNITOR to perform or comply with the terms of this
> Agreement; or in the enforcement of the terms of this

5.

Agreement. An itemized statement of loss and expense incurred by the SURETY, sworn to by an officer of the SURETY, shall be prima facie evidence of the fact and extent of the liability of the undersigned to the SURETY in any claim or suit by the SURETY against the undersigned.

CLAIMS AND SETTLEMENTS - The SURETY shall have the exclusive right for itself and the undersigned to determine in good faith whether any claim or suit upon any BONDS shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed. SURETY may incur such expenses, including reasonable attorney's fees, as SURETY deems necessary or advisable in the investigation, defense and payment of such claims. It is the SURETY's exclusive right at its option and sole discretion to adjust, settle or compromise any claim, demand, suit or judgment upon the BONDS, unless the PRINCIPAL and the INDEMNITOR shall request the SURETY to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the SURETY, at the time of such request, cash or collateral satisfactory to the SURETY in kind and amount to be used in paying any award(s) or judgment(s) rendered or that may be rendered. The SURETY shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation, and nothing contained herein shall be construed to waive or diminish any right, defense or remedy which the SURETY might have if this instrument were not executed.

DISCHARGE/PLACE IN FUNDS - The INDEMNITOR will, within thirty (30) days after the SURETY's written demand, either: a) procure the discharge of the SURETY from any BONDS and all liability by reason thereof; or, b) if unable to secure such discharge, the INDEMNITOR will place the SURETY in funds that are immediately available and sufficient to meet all of SURETY's liabilities or potential liabilities (including attorney's fees, costs and expenses) arising from any BONDS or request therefor (as may or may not be evidenced by the establishment of a reserve), as determined by the SURETY in its sole discretion, whether or not any payments have been made by the SURETY. The SURETY shall send its written demand to the INDEMNITOR's last known address by registered or certified mail.  Alternatively, at the SURETY's sole discretion and election, INDEMNITOR and SURETY may make other provisions satisfactory to the SURETY for the funding of any bonded obligation(s). The INDEMNITOR hereby acknowledges that if the INDEMNITOR breaches its obligations set forth in this paragraph, the SURETY will have no adequate remedy at law and shall be entitled to injunctive relief, including without limitation specific performance of the terms of this Agreement.

6.

TRUST FUND, ASSIGNMENT AND OTHER REMEDIES - The PRINCIPAL and INDEMNITOR hereby agree that all of their interest, title and rights in the contract or undertaking referred to in the BONDS, or in, or growing in any manner out of the BONDS shall be held as a trust fund in which the SURETY has an interest, and shall inure to the benefit of the SURETY for any liability or loss it may have or sustain under any of the BONDS, and this Agreement constitutes notice of such trust. The PRINCIPAL and the INDEMNITOR hereby do and will assign, pledge and convey to the SURETY, as collateral security for the full performance of their obligations under this Agreement and for the payment of any other indebtedness or liability of the PRINCIPAL and INDEMNITOR to the SURETY, whether heretofore or hereafter incurred, the PRINCIPAL and/or INDEMNITOR's interest, title and rights in, and growing in any matter out of, all contracts referred to in the BONDS, or in, or growing in any manner out of the BONDS, but only in the event of: 1) any abandonment, forfeiture or breach of any contract referred to in the BONDS or any breach of any BONDS; or 2) a default in discharging any other indebtedness or liability incurred in connection therewith, when due; or 3) any breach of this Agreement; or 4) any assignment by the PRINCIPAL for the benefit of creditors, or upon PRINCIPAL's involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether insolvent or not. Upon the happening of any of the events described in 1) through 4) herein, the SURETY shall have the right, with or without exercising any other right conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract(s) covered by any BOND, and at the expense of the PRINCIPALS and INDEMNITORS to complete or arrange for the completion of the same, and the PRINCIPALS and INDEMNITORS shall promptly, upon demand, pay to the SURETY all losses, fees, costs and expenses so incurred. The PRINCIPALS and INDEMNITORS hereby irrevocably constitute and appoint the SURETY as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all rights of the PRINCIPALS and INDEMNITORS assigned and set over to the SURETY in this Agreement, including the authority to execute on behalf of the PRINCIPALS and INDEMNITORS any documents or agreements deemed necessary and proper by the SURETY in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to the SURETY under all other provisions of this Agreement. The PRINCIPALS and INDEMNITORS hereby ratify all actions taken and done by the SURETY as attorney-in-fact.

BOOKS AND RECORDS - Until the SURETY shall have been furnished with competent evidence of its discharge, without loss, from any and all BONDS, the SURETY shall have the right to free access to the books, records and accounts of each of the undersigned for the purpose of examining them. Each of the undersigned hereby authorizes and requests any

7.

depositories in which funds of any of the undersigned may be deposited to furnish to the SURETY the amount of such deposits as of any date requested; and, any person, firm or corporation doing business with the undersigned is hereby authorized to furnish any information requested by the SURETY concerning any transaction. The SURETY may furnish copies of any information which it now has or may hereafter obtain concerning each of the undersigned to other persons or companies for the purpose of procuring co-suretyship or reinsurance or complying with regulatory requirements or advising interested persons or companies.

OTHER INDEMNITY - The INDEMNITOR shall continue to remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPAL and/or the INDEMNITOR, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said BONDS, from the PRINCIPAL or INDEMNITOR or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the SURETY may have or acquire against the PRINCIPAL and INDEMNITOR or others, whether by the terms of any agreement or by operation of law or otherwise.

21.     Liberty and the Capital Retention Defendants entered into a written capital retention agreement ("**Retention Agreement**"), whereby said Defendants would be subject to liability if the combined tangible net worth of UPA California and UPA Resort Construction L.C. fell below $2,500,000.00.  The Retention Agreement was executed on or about September 30, 2002.  The Retention Agreement was revised on or about September 15, 2003, such that the dollar requirement for the combined tangible net worth was lowered to $1,200,000.00.  That revision to the Retention Agreement was premised upon, and the result of, representations that future bonding needs for UPA Resort Construction and UPA California would be greatly reduced.  True and correct copies of the Retention Agreement, and the revised Retention Agreement, are collectively attached to this Complaint as Exhibit 2. The terms of the Retention Agreement are incorporated herein by this reference as though fully set forth.

22.     At times following execution of both the GAI, and the Retention Agreement, Defendant UPA California entered into various contracts for works of construction, including but not limited to contracts for:

8.

1    (1)    construction of a mixed-use development commonly known as Oakland City

2    Walk, located in the City of Oakland, in the County of Alameda ("**City Walk Project**"); and

3    (2)    construction of employee housing located in Curry Village, within Yosemite

4    National Park, in Tuolumne County, California ("**Curry Village Project**").

5    23.    The contracts for the City Walk Project and the Curry Village Project

6    respectively required, *inter alia*, that UPA California have a license bond, and furnish the

7    respective project owners with a performance bond and/or a labor and materials payment

8    bond in amounts specified in the respective contract documents.

9    24.    Liberty issued the following bonds on behalf of UPA California:

10    (1)    Performance Bond Number 965005646 ("**City Walk Performance Bond**");

11    (2)    Payment Bond Number 965005646 ("**City Walk Payment Bond**"); and

12    (3)    Performance Bond Number 965005662 ("**Curry Village Payment Bond**").

13    These bonds are collectively referred to in this Complaint as "**UPA Bonds**."

14    25.    It is alleged by various obligees and claimants that UPA California defaulted

15    on certain performance and payment obligations, and that said obligations fall within

16    Liberty's obligations under the UPA Bonds.

17    26.    As a result of those alleged defaults of UPA California, Liberty has incurred

18    and continues to incur significant losses, costs and/or expenses due to the investigation,

19    defense and/or satisfaction of claims against the UPA Bonds.

20    27.    The losses, costs and expenses actually incurred by Liberty and resulting

21    from claims against the UPA Bonds are presently in excess of $9,000,000.00.

22    28.    To date, and in addition to the actual losses, costs and expenses described

23    above, the outstanding claims against the UPA Bonds are currently estimated to be in excess

24    of $30,000,000.00.

25    29.    Liberty anticipates that it will incur additional losses, costs, and/or expenses

26    in connection with the UPA Bonds on claims that have been made (but for which Liberty

27    has yet to ascertain whether it bears liability on the amounts which may be due to the

28    claimants), and for claims that have yet to be made.

9.

1    30.    When the full amount Liberty is required to pay under and as a result of the

2  UPA Bonds is known, Liberty will seek leave to amend this complaint to state a claim for

3  damages in such amount.

4              **FIRST CAUSE OF ACTION - Breach of Indemnity Agreement**

5                        **(Against the Contractual Indemnity Defendants)**

6    31.    Liberty re-alleges and incorporates by reference the allegations contained in

7  the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

8    32.    On or about September 18, 2007, Liberty requested in writing that the

9  Contractual Indemnity Defendants indemnify and hold harmless Liberty from and against all

10  claims, damages, losses, costs, and expenses which Liberty had sustained, and might sustain,

11  by reason of having executed or procured the execution of the UPA Bonds.  That written

12  demand identified then-known bond claims of not less than $7,991,058.00.  A true and

13  correct copy of that written demand is attached to this Complaint as Exhibit 3.

14    33.    Subsequent to September 18, 2007, representatives of Liberty continued to

15  communicate with the Contractual Indemnity Defendants, both in writing and via telephone

16  and email, regarding claims against the UPA Bonds, and the Contractual Indemnity

17  Defendants' obligations to indemnify, defend and hold-harmless Liberty for all losses,

18  damages, costs and expenses incurred and/or paid as a result of Liberty's issuance of the

19  UPA Bonds.

20    34.    The Contractual Indemnity Defendants have failed, and continue to fail, to

21  jointly, severally and/or collectively indemnify, defend and hold-harmless Liberty, as

22  required by the GAI.

23    35.    Liberty fully performed its obligations and duties under the GAI.

24    36.    Liberty has incurred and will continue to incur losses, costs, and expenses,

25  including settlement payments, attorneys' fees, consultants' fees, and administrative

26  expenses, in connection with the UPA Bonds, and Liberty remains at risk for additional,

27  future losses, fees and expenses, as a result of UPA California's alleged defaults under the

28  ///

FIRST AMENDED COMPLAINT OF                                CASE NO. CV 08-0611 BZ
PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY

1  UPA Bonds, and the Contractual Indemnity Defendants' past and ongoing failures to

2  comply with the terms of the GAI.

3       37.    As a result of the Contractual Indemnity Defendants' material breaches of the

4  GAI, Liberty has suffered damages in excess of $9,000,000.00, and in a total amount to be

5  proved at trial.

6       WHEREFORE, Liberty prays for judgment as hereinafter set forth.

7  **<u>SECOND CAUSE OF ACTION - Specific Performance</u>**

8  **(Against the Contractual Indemnity Defendants)**

9       38.    Liberty re-alleges and incorporates by reference the allegations contained in

10  the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

11       39.    The Contractual Indemnity Defendants' agreements to the terms of the GAI

12  served as partial consideration for Liberty's agreement to extend surety credit in the form of

13  the UPA Bonds.

14       40.    Given the nature of the obligations incurred by Liberty, the terms of the GAI

15  are just and reasonable.

16       41.    Liberty fully performed its obligations and duties under the GAI.

17       42.    The Contractual Indemnity Defendants have materially breached the terms of

18  the GAI.

19       43.    The GAI specifically provides that, in the event of breach of the GAI, Liberty

20  may seek and is entitled to obtain specific performance against the Contractual Indemnity

21  Defendants.

22       44.    Liberty cannot be adequately compensated for the Contractual Indemnity

23  Defendants' breach of the GAI in damages, and therefore the remedy at law is inadequate.

24       45.    Liberty requests that the Contractual Indemnity Defendants be required and

25  ordered to specifically perform in accordance with the provisions of the GAI requiring the

26  Contractual Indemnity Defendants to jointly, severally and/or collectively indemnify and

27  hold harmless Liberty from and against any and all claims, damages, expenses, losses, costs,

28  professional and consulting fees, disbursements, interests and expenses of every nature

11.

1    (including premiums and fees due for the issuance and continuance of any bond or bonds)

2    which Liberty may sustain, incur or become liable for by reason of having executed or

3    procured the execution of any bond or bonds.

4        46.    Liberty's losses, costs and expenses incurred as a result of claims against the

5    UPA Bonds presently exceed $9,000,000.00.

6        47.    Separate and apart from the above-described losses, costs and expenses,

7    claims under the UPA Bonds presently exceed $30,000,000.00.

8        48.    Liberty requests that the Contractual Indemnity Defendants be required to

9    specifically perform under the terms of the GAI, such that the Contractual Indemnity

10    Defendants must convey to Liberty sufficient funds or property to serve as collateral for the

11    combined total of the dollar amounts paid to date by Liberty, and the dollar amounts of the

12    existing claims under the UPA Bonds.

13        WHEREFORE, Liberty prays for judgment as hereinafter set forth.

14    **THIRD CAUSE OF ACTION – Injunctive Relief**

15    **(Against the Contractual Indemnity Defendants)**

16        49.    Liberty re-alleges and incorporates by reference the allegations contained in

17    the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

18        50.    Based on the express provisions of the GAI, as well as the equitable doctrine

19    of *quia timet*, Liberty is entitled to receive on demand collateral adequate to protect Liberty

20    from actual or potential liability or loss as a result of having issued the UPA Bonds.

21        51.    To date, none of the Contractual Indemnity Defendants have indemnified,

22    defended or held-harmless Liberty in connection with the claims against the UPA Bonds,

23    and none of the Contractual Indemnity Defendants have transferred or otherwise provided

24    collateral to protect Liberty's interests as required under the GAI.

25        52.    Unless preliminary injunctive relief is granted, Liberty will not be adequately

26    secured for its obligations under the Bonds, to Liberty's irreparable harm.

27    ///

28

53. Based on the provisions of the GAI, and the equitable doctrine of *quia timet*, Liberty is entitled to have the Contractual Indemnity Defendants, and each of them, enjoined and restrained from selling, transferring, or disposing of or liening assets and property, and from allowing their respective assets to be diminished. Unless preliminary injunctive relief is granted, the Contractual Indemnity Defendants, and each of them, are likely to transfer or otherwise divert their assets from being used to discharge their obligations to indemnify, defend and hold-harmless Liberty, all to Liberty's irreparable harm.

54. Based on the provisions of the GAI, and the equitable doctrine of *quia timet*, Liberty is entitled to have the Contractual Indemnity Defendants open an account or separate accounts with a bank designated by Liberty, which account(s) are to be designated as a trust account(s), for the deposit of all monies received, due and to become due under any contracts bonded by Liberty. Unless preliminary injunctive relief is granted, Liberty will not be adequately secured for its obligations under the UPA Bonds, to Liberty's irreparable harm.

55. Under the express provisions of the GAI, Liberty is entitled to receive access to the books, records and accounts of the Contractual Indemnity Defendants. Liberty believes and asserts that unless compelled by order of this Court, the Contractual Indemnity Defendants will not grant Liberty full and complete access to their books, records and accounts, which will result in irreparable harm to Liberty because Liberty will be unable to accurately administer or complete the unfinished bonded projects, or account for assets.

WHEREFORE, Liberty prays for judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION – Declaratory Relief

### (Against Defendants UPA California and UPA Group, Inc.)

56. Liberty re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

57. Liberty is informed and believes that either UPA California or UPA Group, Inc., or some combination thereof, have and intend to prosecute affirmative claims arising

///

13.

1  from the City Walk Project, which claims include causes of action against the owner(s) of

2  the City Walk Project, and subcontractors or suppliers for the City Walk Project.

3       58.    Under the terms of the GAI, the Contractual Indemnity Defendants, including

4  UPA California and UPA Group, Inc., are required to assign, convey and/or transfer over

5  claims under or related to contracts for which Liberty has issued surety bonds.

6       59.    Liberty is informed and believes that either UPA California or UPA Group,

7  or some combination thereof, have asserted and pursued, or intend to assert and pursue

8  affirmative claims against the owner(s) of, and certain subcontractors or suppliers for, the

9  City Walk Project.

10      60.    Liberty has demanded that all such affirmative claims be assigned, conveyed

11 or transferred to Liberty.

12      61.    An actual controversy and dispute exists between Liberty and either UPA

13 California, UPA Group, Inc., or some combination thereof, as to the ownership of the above-

14 described affirmative claims.

15      62.    Liberty seeks an order for declaratory relief stating that Liberty is the rightful

16 holder of any and all of UPA California's and UPA Group, Inc.'s affirmative claims arising

17 from or related to the City Walk Project, and that Liberty is entitled to pursue such claims

18 either in Liberty's own name, or in the name of either UPA California, UPA Group, Inc., or

19 some combination thereof.

20      63.    Liberty also seeks an order for declaratory relief stating that if and to the

21 extent that either UPA California, UPA Group, Inc., or some combination thereof recover

22 money or other compensation as a result of the above-described affirmative claims, then

23 Liberty is the rightful beneficiary of such recovery, and such recovery must be transferred or

24 conveyed to Liberty without delay.

25      WHEREFORE, Liberty prays for judgment as hereinafter set forth.

26 ///

27 ///

28 ///

14.

### FIFTH CAUSE OF ACTION - *Quia Timet*

#### (Against the Contractual Indemnity Defendants)

64.    Liberty re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

65.    Various claimants have alleged that either UPA California, UPA Group, Inc., or some combination thereof, failed to fulfill performance and payment obligations under the contracts for which Liberty issued the UPA Bonds and, as a result, have made various claims under the UPA Bonds.  In addition, the owner of the City Walk Project has purported to terminate its contractual relationship or relationships with UPA California and/or UPA Group, Inc.

66.    Liberty has requested that the Contractual Indemnity Defendants jointly, severally and/or collectively indemnify, defend and hold harmless Liberty from and against any and all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any bond or bonds) which Liberty may sustain, incur or become liable for by reason of having executed or procured the execution of the UPA Bonds.  Despite Liberty's requests, the Contractual Indemnity Defendants failed, and continue to fail, to jointly, severally and/or collectively indemnify and hold harmless Liberty, as required by the GAI.

67.    The circumstances and conduct described above indicate that the Contractual Indemnity Defendants are incurring losses, costs and/or expenses, which conduct is exposing and will continue to expose Liberty to increasing losses, costs and/or expenses resulting from Liberty's issuance of the UPA Bonds.

68.    The circumstances and conduct described above indicate that the Contractual Indemnity Defendants will not be able to mitigate or cure the increasing liability to which Liberty will be exposed as a result of Liberty's issuance of the UPA Bonds.

69.    The circumstances and conduct described above indicate that the Contractual Indemnity Defendants will not, or may not be able to, provide indemnity or collateral to

15.

1  Liberty for the sums for which Liberty has become, is becoming, and may become liable

2  under the UPA Bonds, which has caused Liberty apprehension and fear of impending

3  liability.

4      70.    Based on the foregoing, Liberty alleges that it may not or will not be

5  reimbursed by the Contractual Indemnity Defendants for past or future payments made by

6  Liberty under or as a result of the UPA Bonds. Therefore, Liberty will suffer irreparable

7  harm if Liberty's prayer for relief as to the First, Second, Third and Fourth Causes of Action

8  is not granted.

9      WHEREFORE, Liberty prays for judgment as hereinafter set forth.

10  **SIXTH CAUSE OF ACTION – Breach of Capital Retention Agreement**

11  **(Against the Capital Retention Defendants)**

12      71.    Liberty re-alleges and incorporates by reference the allegations contained in

13  the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

14      72.    Liberty performed its obligations under the Retention Agreement.

15      73.    Under the Retention Agreement, as in effect at the time of the issuance of the

16  UPA Bonds, the Capital Retention Defendants were obligated to ensure that the combined

17  tangible net worth of UPA California and UPA Resort Construction, L.C. remain at or

18  greater than $1,200,000.00.

19      74.    Under the Retention Agreement, the term "tangible net worth" means:

20          the excess of (i) the net book value of all assets of UPA
           California and UPA Resort Construction, L.C., combined, as
21          may be properly classified as such, excluding, intangible
           assets . . . , receivables from related parties, deferred tax
22          assets, unapproved claims and change orders, and accounts
           receivables greater than 120 days past due, less (ii) the
23          aggregate amount of all liabilities of UPA California and UPA
           Resort Construction, L.C., all of the foregoing as determined
24          in accordance with GAAP.

25      75.    Liberty is informed and believes that UPA California was dissolved in or

26  prior to March 2007, and that following, and as a result of that dissolution, the tangible net

27  worth of UPA California became nil.

28  ///

16.

1    76.    Liberty believes and asserts that, prior to August 2007, the tangible net worth

2    of UPA Resort Construction, L.C. fell below the $1,200,000.00 amount specified and

3    required by the Retention Agreement.

4    77.    Liberty believes and asserts that none of the Capital Retention Defendants

5    took any action to ensure that the combined tangible net worth requirement set forth in the

6    Retention Agreement was satisfied, despite their ongoing obligations to Liberty under the

7    Retention Agreement.

8    78.    On September 18, 2007, and as a result of then-known claims against the City

9    Walk Bonds, Liberty wrote to certain of the Capital Retention Defendants, and made

10   demand under the Retention Agreement, including a demand for proof of satisfaction of the

11   requirements of the Retention Agreement.  In that letter-demand, Liberty advised:  "If we do

12   not hear from you by September 28, 2007, we will assume that a breach has occurred and

13   take any necessary steps to protect Liberty's interests."  A true and correct copy of that

14   demand letter is attached to this Complaint as Exhibit 4.

15   79.    To date, none of the Capital Retention Defendants have provided Liberty

16   with proof of past or current satisfaction of the requirements of the Retention Agreement.

17   80.    Liberty believes and asserts that the Capital Retention Defendants' failures to

18   ensure the maintenance of $1,200,000.00 in tangible net worth for UPA California and UPA

19   Resort Construction, L.C., caused, or served as a causal factor in, some or all of the claims

20   against the City Walk Bonds.

21   81.    As a result of the Capital Retention Defendants' failures to satisfy or ensure

22   the satisfaction of the requirements of the Retention Agreement, Liberty has been damaged,

23   in an amount or amounts to be proven at trial.

24   WHEREFORE, Liberty prays for judgment as hereinafter set forth.

25   ///

26   ///

27   ///

28   ///

17.

**PRAYER FOR RELIEF**

Liberty prays for judgment in this action as follows:

**On the First Cause of Action – Against the Contractual Indemnity Defendants**

1.    For compensatory damages in an amount not less than $9,000,000.00, with the actual amount of compensatory damages to be proven at trial;

2.    For interest at the maximum legal rate;

3.    For attorneys' fees and costs incurred herein; and

4.    For such other and further relief as the court may deem just and proper.

**On the Second Cause of Action – Against the Contractual Indemnity Defendants**

1.    For an Order requiring the Contractual Indemnity Defendants' joint and several specific performance under the GAI, such that said Defendants, and each of them, are required to provide Liberty with collateral with a collective dollar value of not less than $39,000,000.00.

**On the Third Cause of Action – Against the Contractual Indemnity Defendants**

1.    For an Order for a preliminary injunction requiring the following:

(a)    That the Contractual Indemnity Defendants be required to open an account or separate accounts with a bank designated by Liberty, which account(s) are to be designated as a trust account(s), for the deposit of all monies received, due and to become due under any contracts bonded by Liberty.

(b)    That said Defendants be required to perform under the books and records provisions of the GAI, such that Liberty is provided access to the books, records and accounts in the possession, custody or control of Defendants which may be helpful to accurately administer, adjust and complete any contract or subcontract pursuant to the UPA Bonds and to determine Defendants' financial condition.

(c)    That said Defendants be enjoined and restrained from selling, transferring, or disposing of or liening their assets and property, and further enjoining and restraining them from allowing their assets and property to be diminished, unless and until Liberty is fully indemnified and held-harmless for all losses, costs and expenses arising from

18.

1  claims against the UPA Bonds.

2         (d)  That liens be granted upon the assets and property, including realty,

3  personally and mixed property, owned by said Defendants, and property in which they have

4  an interest.  Such liens shall secure Liberty against losses sustained or to be sustained, by

5  virtue of having executed the UPA Bonds.  Such liens shall remain in effect unless and until

6  Liberty is fully indemnified and held-harmless for all losses, costs and expenses arising from

7  claims against the UPA Bonds.

8         2.    For attorneys' fees and costs incurred herein; and

9         3.    For such other and further relief as the court may deem just and proper.

10 **On the Fourth Cause of Action – Against the Contractual Indemnity Defendants**

11        1.    For declaratory relief, in an Order stating that:

12        (a)  Liberty is the rightful holder of any and all affirmative claims arising

13 from or related to the City Walk Project, and that Liberty is entitled to pursue such claims

14 either in Liberty's own name, or in the name of either UPA California, UPA Group, Inc., or

15 some combination thereof; and

16        (b)  If and to the extent that either UPA California, UPA Group, Inc., or some

17 combination thereof recover money or other compensation as a result of the above-described

18 affirmative claims, then Liberty is the rightful beneficiary of such recovery, and such

19 recovery must be transferred or conveyed to Liberty without delay.

20 **On the Fifth Cause of Action – Against the Contractual Indemnity Defendants**

21        1.    For an Order stating that, under the equitable doctrine of *quia timet*, Liberty

22 is entitled to the relief as specifically requested under Liberty's second, third and fourth

23 causes of action herein.

24 ///

25 ///

26 ///

27 ///

28 ///

FIRST AMENDED COMPLAINT OF                          CASE NO. CV 08-0611 BZ
PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY

**On the Sixth Cause of Action – Against the Capital Retention Defendants**

      1.     For compensatory damages in an amount to be proven at trial;

      2.     For interest at the maximum legal rate; and

      3.     For such other and further relief as the court may deem just and proper.

Dated: _Aug. 11, 2008_          WOLKIN • CURRAN, LLP


By:  _A. K. Thomas_
              James D. Curran
              Amy K. Thomas

Attorneys for Plaintiff
LIBERTY MUTUAL INSURANCE COMPANY

20.

# EXHIBIT ONE

# EXHIBIT ONE



**Liberty Bond Services.**
Member of Liberty Mutual Group

**General Agreement of Indemnity**

This General Agreement of Indemnity (hereinafter the "Agreement") is made and entered into by the following individuals, partnerships, corporations, and/or other business entities, as applicable, UPA Resort Construction LC; UPA California;UPCAI Construction Inc.;    (individually and collectively hereinafter called the "Indemnitor(s)") jointly and severally, in favor of Liberty Mutual Insurance Company, Employers Insurance Company of Wausau (formerly "EMPLOYERS INSURANCE OF WAUSAU A Mutual Company"), Peerless Insurance Company, and any other company that is part of or added to the Liberty Mutual Group, severally not jointly, and for which Liberty Bond Services underwrites surety business (individually and collectively hereinafter called the "Surety") with respect to any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligations (hereinafter called the "Bond(s)") requested from and/or issued by the Surety before or after the date of this Agreement, for i) UPA Resort Construction LC; UPA California; UPCAL Construction Inc.; ii) any of the Indemnitors or Principals' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and iii) any other entity or person in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others whether or not said others are named herein (individually and collectively hereinafter called the "Principal(s)").

### WITNESSETH

WHEREAS, the Indemnitors and Principals, in the performance of contracts and the fulfillment of obligations generally, whether in their own names solely or as co-adventurers with others, may desire, request, or be required to give or procure certain Bonds, and/or to renew, continue, extend or substitute, from time to time, the same or new Bonds with the same or different penalties, and/or conditions, as may be desired, requested or required, in the renewal, continuation, extension and/or substitution thereof; or the Indemnitors or Principals may request the Surety to refrain from canceling the Bonds; and

WHEREAS, at the request of the Indemnitors and with both the express understanding that this Agreement be given and in reliance upon this Agreement, the Surety has heretofore or has presently been requested to and/or has executed or has procured to be executed, and, from time to time hereafter, may be requested to and/or may execute or may procure to be executed, the Bonds on behalf of the Principals; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling any or all Bonds.

NOW, THEREFORE, in consideration of the premises, and intending to be legally bound hereby, the Indemnitors and Principals for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

**FIRST: PREMIUMS** - The Indemnitors and Principals will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety for any Bonds requested from and/or issued by the Surety in accordance with its rate filings, its manual of rates as determined by the Surety, or as otherwise determined by the Surety, and where such premium, costs and charges are annual, continue to pay the same until the Indemnitors or Principals shall deliver evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

**SECOND: INDEMNITY** – The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement or a breach of any other written agreements between or for the benefit of the Surety and the Indemnitor(s) and/or Principal(s) (hereinafter referred to as "Other Agreements"), court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements. Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors and/or Principals promptly, upon demand by the Surety, whether or not the Surety shall have made any payment therefor and, at the Surety's sole option, irrespective of any deposit of collateral. If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims therefor. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously provided to the Surety. The Surety shall have the right to use any collateral, or any part thereof, in payment or settlement of any such liabilities for which the Indemnitors and Principals would be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements. In the event of any payment by the Surety, the Indemnitors and Principals further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement or Other Agreements under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. Surety shall have no obligation to invest or provide a return on any collateral provided to it under this Agreement.

**THIRD: ASSIGNMENT** - The Indemnitors hereby consenting do assign, transfer, pledge and convey to the Surety and agree to use their best efforts to cause the Principals to assign, transfer, pledge and convey to the Surety as collateral security for the full performance of the covenants and agreements herein contained, contained in Other Agreements and for the payment of any other indebtedness or liability of the Indemnitors and/or Principals to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract being effective as of the date of the Bond covering such contract, the following: (a) all the right, title and interest of the Indemnitors and/or Principals in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) all the right, title and interest of the Indemnitors and/or Principals in

and to all machinery, supplies, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in the process of construction, in storage at the site or elsewhere, or in transportation to any and all sites; (c) all the right, title and interest of the Indemnitors and/or Principals in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) all actions, causes of actions, claims and demands whatsoever which the Indemnitors and/or Principals may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer or materialman; and (e) any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Indemnitors or Principals have an interest; (f) all licenses, patents, copyrights and trade secrets; (g) all warehouse receipts, bills of lading and general intangibles; (h) all tax refunds and claims for tax refunds; and (i) all limited partnership and general partnership interests; but only in the event of: (1) any abandonment, forfeiture or breach of any contract referred to in the Bonds or of any breach of any Bond; or (2) a default in discharging any other indebtedness or liabilities incurred in connection therewith, when due; or (3) any breach of the covenants and conditions of this Agreement or Other Agreements, including but not limited to the failure to obtain from the Surety written approval of a Change in Control; or (4) an assignment by any Indemnitor or Principal for the benefit of creditors, or of the appointment or any application for the appointment, of a receiver or trustee for any Indemnitor or Principal whether insolvent or not; or (5) any proceeding which deprives the Indemnitor or Principal of the use of any of the machinery, supplies, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) any Indemnitor or Principal's death, absconding, disappearance, incompetence, insolvency, conviction of a felony, or imprisonment, if the Indemnitor or Principal be an individual. Principal(s) shall further obtain, maintain and assign all proceeds from insurance coverage as may be required by the Surety from insurance companies acceptable to Surety, including, as may be applicable, coverage for acts of terrorism. Failure to obtain or maintain insurance coverages as required by Surety shall be a breach of this agreement and shall permit Surety to demand cash collateral from Principal(s) in an amount up to and including the full penal sum of any outstanding Bond(s).

FOURTH: UNIFORM COMMERCIAL CODE - This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

FIFTH: TAKEOVER - In the event of any of the following: breach, default, or termination asserted by the obligee in any Bond; any Principal's abandonment of the work or forfeiture of any contract covered by any Bond, any Principal's failure to pay obligations incurred in connection therewith; or if the Principal is an individual, in the event of the Principal's death, absconding, disappearance, incompetence, insolvency, conviction of a felony, or imprisonment; the bankruptcy of any Principal; the appointment of a receiver or trustee for any Principal or for the property of any Principal; an assignment for the benefit of creditors of any Principal; if any action is taken by or against any Principal under or by virtue of the Federal Bankruptcy Code; should reorganization or arrangement proceedings be filed by or against any Principal under said Code; and/or if any action is taken by or against any Principal under the insolvency laws of any state, possession or territory of the United States, then the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by the Bonds, and the Indemnitors hereby agree to use their best efforts to cause the Principal to permit the Surety to take possession of any part or all of the work under any contract or contracts covered by the Bonds, at the expense of the Indemnitors and Principals, to complete or arrange for the completion of the same, and the Indemnitors and Principals shall promptly, upon demand, pay to the Surety all losses, fees, costs and expenses so incurred.

SIXTH: CHANGES - The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors or Principals, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors. Indemnitors further represent and warrant to surety that they are currently informed and remain informed and apprised of Principal's or Principals' business activities, ventures and financial affairs, including but not limited to the type, size (single job and/or aggregate program), location and status of projects and contracts performed by Principal(s) and secured by Bond(s) executed, provided or procured by Surety. Surety has no obligation to inform the Indemnitors of any change in any aspect of Principal(s)' business activities or financial affairs.

SEVENTH: ADVANCES - The Surety is authorized and empowered, in its sole discretion and without any obligation to do so, to guarantee loans, to advance or lend to an Indemnitor or Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds, or pursuant to any Other Agreements, and all money so expended, lent, advanced, or loans guaranteed from time to time to or on behalf of any such Indemnitor or Principal in connection therewith, including costs of investigation, administration, and/or in the completion of any contract by the Surety, and any and all other costs and expenses incurred by the Surety in relation thereto, unless repaid with interest at the maximum rate permitted by law by any Indemnitor or Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors and Principals shall be responsible notwithstanding that said money or any part thereof should not be so used by any such Indemnitor or Principal.

EIGHTH: BOOKS AND RECORDS -- Principal(s) and Indemnitor(s) shall provide to Surety within 120 days of their fiscal year end, financial statements prepared in accordance with Generally Accepted Accounting Principles, and reports prepared by reputable accounting firms prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services ("SARS"). If Principal(s) and/or Indemnitor(s) have reports prepared by reputable accounting firms in accordance with the AICPA's Statements on Auditing Standards in the ordinary course of their financial reporting, then such reports shall be supplied instead of the reports in accordance with SARS. Principal(s) and Indemnitor(s) shall also provide any management letters received from their accountants within 30 days of receipt. In addition to the forgoing, at any time, and until such time as the liability of the Surety under any and all Bonds is terminated, or the Surety is fully reimbursed all amounts due to it under this Agreement or Other Agreements, the Surety shall have the right of reasonable access to the books, records and/or accounts of the Indemnitors and Principals for the purpose of inspection, copying or reproduction; and any financial institution, depository, materialman, supply house or other person, firm or corporation is hereby specifically authorized by each Indemnitor and Principal to furnish the Surety, at the Surety's request, any information requested including but not limited to, financial and credit reports relating to the financial condition of the Indemnitors and/or Principals, and as to any bonded or non-bonded contract performed, in

progress or awarded, the status of the work, the condition of the performance of such contracts and payments of accounts. The Indemnitors and Principals agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information. Failure to provide the information required in this paragraph shall be a breach of this Agreement, and shall entitle Surety to demand in its sole discretion cash collateral up to the penal sum of any outstanding Bond(s).

NINTH: **DECLINE EXECUTION** – The Surety, at its sole discretion, may decline to execute, renew or extend any Bond, including final bonds, and may cancel any Bond unless the Bond states otherwise, and the Indemnitors and Principals agree to make no claim to the contrary. If the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any other Bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond. The Indemnitors and Principals acknowledge that the Surety makes no representation as to the validity or acceptability of any Bond to any person, firm or entity of whatever sort or kind under any contract, and agree that they shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person, firm or entity of whatever sort or kind to award any contract to the Principals, or to accept any Bond executed and delivered by the Surety, or that the Surety has been requested to execute and delivery.

TENTH: **NOTICE OF EXECUTION** – The Indemnitors and Principals hereby waive notice of the execution of any Bond, the acceptance of this Agreement or Other Agreements, and of any change in surety credit or other fact that might materially alter the Indemnitors and Principals' obligations hereunder, and the Indemnitors and Principals hereby waive all notice of any default, or any other act or acts giving rise to any claim under any Bond, as well as notice of any and all liability of the Surety under any Bond, and any and all liability on their part hereunder, to the end and effect that, the Indemnitors and Principals shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might otherwise have been entitled to make as a result of lack of notice.

ELEVENTH: **TRUST FUND** – The Indemnitors and Principals covenant and agree that all of their interest, title and rights in any contract or undertaking referred to in any Bond, or in, or growing in any manner out of any Bond, including but not limited to payments for or on account of any contract, shall be held as a trust fund and/or as a constructive or equitable trust in which the Surety has an interest, and shall inure to the benefit of the Surety for any liability or loss it may have or sustain under any Bond including but not limited to the payment of obligations incurred in the performance of any contract and for labor, materials, and services furnished in the prosecution of the work provided in any contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract covered by any Bond are trust funds, whether in the possession of the Indemnitors or Principals or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract for which the Surety would be liable under any Bond; said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, under this Agreement, or under any Other Agreements, and this Agreement constitutes notice of such trust.

TWELFTH: **HOMESTEAD** – To the extent permitted by applicable law, the Indemnitors and Principals hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

THIRTEENTH: **SETTLEMENTS** – The Surety shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bond, unless any Indemnitor or Principal, providing a reasonable legal basis therefor, shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

FOURTEENTH: **SURETIES** – In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement shall inure also to the benefit of such other sureties, co-sureties and reinsuring sureties, their successors and assigns, as their interests may appear.

FIFTEENTH: **SUITS** – Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

SIXTEENTH: **OTHER INDEMNITY** – The addition to this Agreement of any Indemnitor, including any entities acquired after the date of execution of this Agreement, may be effected by written amendment executed by such Indemnitor only, notwithstanding any language herein to the contrary. The Indemnitors and Principals shall continue to remain bound under the terms of the Agreement, Other Agreements, and any other agreements containing indemnity obligations, even though the Surety may from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors and Principals, accept, release, or reduce any indemnity obligations or collateral of current or future Indemnitors and Principals for any reason. The Indemnitors and Principals expressly waive notice from the Surety of any such action and, furthermore, it is explicitly understood and agreed by the Indemnitors and Principals that any and all other rights which the Surety may have or acquire against the Indemnitors and Principals and/or others under any such agreements or additional agreements or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. No Indemnitor shall make any defense to the enforcement of this Agreement based on the execution of Other Agreements or related to the addition or the release of any Indemnitor, and each Indemnitor explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement. Principals and Indemnitors also waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under the agreement, at law or in equity, have been satisfied in full.

SEVENTEENTH: **INVALIDITY** – Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction shall not render the other provisions hereof invalid. In case any of the parties set forth in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, including lack of authority to bind any party, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. Each party agrees to execute promptly any documentation necessary to cure any such failure, defect or invalidity. It is understood and agreed by the Indemnitors and Principals that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors and Principals or others whether by the terms of any other agreement or by operation of law or otherwise.

**EIGHTEENTH: ATTORNEY-IN-FACT** - The Indemnitors and Principals hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all the rights of the Indemnitors and Principals assigned, transferred and set over to the Surety in this Agreement, with full power and authority to execute on behalf of and sign the name of any Indemnitor and/or Principal to any voucher, release, or other documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors and Principals hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact and agree to protect and hold harmless the Surety for acts herein granted as attorney-in-fact.

**NINETEENTH: TERMINATION** – Any Indemnitor may terminate its liability under this Agreement upon twenty days' written notice sent by registered and certified mail or courier requiring proof of delivery signature to the Surety, in care of Liberty Bond Services, Interchange Corporate Center, 450 Plymouth Road, Suite 400, Plymouth Meeting, PA 19462-1644, but any such notice of termination shall not operate to modify, bar, or discharge Indemnitors or Principals as to any Bonds (a) that may have been executed or authorized prior to the expiration of the notice period; (b) which may be executed after the expiration of the notice period in fulfillment of any commitment given by the Surety prior to the expiration of such notice period; (c) executed in connection with any project as to which any bid bond was executed or authorized prior to the expiration of such notice period; and/or (d) which are renewed, extended, substituted or modified after the expiration of such notice period. Such termination of liability as to any Indemnitor or Principal in no way affects the obligation of any other Indemnitor or Principal who has not given notice as herein provided.

**TWENTIETH: AMENDMENTS** – This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written amendment executed to form a part hereof.

**TWENTY-FIRST: JURISDICTION** - As to any legal action or proceeding related to this Agreement, the Indemnitors and Principals consent to the general jurisdiction of any local, state or Federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States or its territories in which any claim may be brought against the Surety under any Bonds, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis. Indemnitors and Principals further waive personal service or any and all process.

**TWENTY-SECOND: CURRENCY EXCHANGE** – Should the Surety, when making any payment or incurring any expense directly or indirectly related to Bonds expend funds in currencies other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the Surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**TWENTY-THIRD: CHANGE IN CONTROL** - The Indemnitors agree to provide the Surety with, at least, forty five (45) days prior written notice of a Change in Control (defined below) and to designate the name and address of the Indemnitor with whom the Surety should correspond with respect to this paragraph, which Indemnitor, all Indemnitors agree is designated to act on behalf of them pursuant to this paragraph. Upon receipt of such notice, the Surety shall advise the Indemnitor designated above, in writing, of its election to (i) approve such Change in Control or (ii) demand that the Indemnitors' procure the discharge of the Surety from any Bonds and all liability by reason thereof. If the Indemnitors fail to give the Surety timely notice of a Change in Control or if the Surety does not approve the Change in Control and if such discharge is not procured to the sole satisfaction of the Surety then, immediately, upon the Surety's written demand, the Indemnitors shall deposit a sum of money or collateral, of a type and value satisfactory to the Surety, equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion. The Surety shall send its written demand to the Indemnitor designated above by overnight courier or by registered or certified mail. The Indemnitors hereby acknowledge that if they or any one of them breaches the obligations set forth in this paragraph, the Surety will not have an adequate remedy at law, will suffer irreparable harm and shall be entitled to injunctive relief, enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this Agreement.

"Change in Control" shall mean: (a) the transfer, merger or consolidation (in one transaction or a series of transactions) of all or substantially all of the assets of any non-individual Principal or Indemnitor; (b) the acquisition (in one transaction or a series of transactions) by any person or group, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control of any Principal or Indemnitor; or (c) the acquisition by any Principal or Indemnitor, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control in any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of ten (10%) percent or more of the voting power of the total outstanding voting stock of any Principal or Indemnitor.

**TWENTY-FOURTH: DOMESTIC PRINCIPAL DOING FOREIGN CONTRACTS/GOVERNING LAW** - The Indemnitors and Principals agree that as to any legal action or proceeding related to any Bond(s) issued in connection with contracts to be performed outside the United States and its territories, this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by Federal law.

DATED as of this _20_ day of _Oct_, 20 _03_.

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor to this Agreement:

WITNESS/ATTEST:

UPA California
445 S Virginia Street
Reno, Nevada 89502

Tax ID or Social Security Number 88-0458349

By: _____
Amako Resort Construction, Partner
Amir Etemadi, President

By: _____ (seal)
UPCAL Construction Inc. Partner
Douglas K. Anderson, President

LBS - 7300                    4/5                    rev. 02.03

UPA Resorts Construction LC
421 West 12300 South #400
Salt Lake City, Utah 84020

Tax ID or Social Security Number 87-0627131

By: _____          By: _____ (seal)
Amako Resorts Construction, Partner          Anderson Corporation, Partner
Amir Etemadi, President                      Douglas K. Anderson, President

UPCAL Construction Inc.
421 West 12300 South #400
Salt Lake City, Utah 84020

Tax ID or Social Security Number 87-0644097

By: _____          By: _____ (seal)
                    ,Secretary               Douglas K. Anderson, President

## CORPORATE ACKNOWLEDGMENT

STATE of ___Utah_____
                                              ss.
County of ___Salt Lake_____

On this __20th__ day of __October____ , 20 _03____ , before me personally appeared Douglas K. Anderson known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being by me duly sworn, deposes and says that (s)he is the __President_____ of __UPCAL Construction, Inc_____ , a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

Notary Public, residing at _Salt Lake City, UT_

My commission expires __7-14-07__

ANITA B. TAYLOR
NOTARY PUBLIC - STATE OF UTAH
2150 SOUTH 1300 EAST, STE. 100
SALT LAKE CITY, UT 84106
My Comm. Exp. 07/14/2007

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of __Utah_____
                                              ) ss.
County of __Salt Lake_____

On this __20th__ day of __October____ , __2003____ , before me personally appeared  to me known and known to me to be the person who is described in and who executed the foregoing Agreement, and who being by me duly sworn, deposes and says that (s)he is the  Manager of UPA Resorts LC . a limited liability company, and that (s)he executed the foregoing Agreement as the act and deed of the said limited liability company.

_____
(Signature of Notary Public)

Notary Public, residing at _Salt Lake City, UT_
My commission expires __7-14-07__

ANITA B. TAYLOR
NOTARY PUBLIC - STATE OF UTAH
2150 SOUTH 1300 EAST, STE. 100
SALT LAKE CITY, UT 84106
My Comm. Exp. 07/14/2007

LBS - 7300                    5/5                    rev. 02.03

AMENDMENT # _1_ TO THE GENERAL AGREEMENT OF INDEMNITY

This Amendment shall be attached to and form part of the General Agreement of Indemnity (hereinafter "Agreement") by _____ in favor of the Surety, dated the _20_ day of _October_, 20_03_. It is hereby agreed that:

1. All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

2. This Amendment shall take effect and form part of the Agreement immediately upon execution.

3. The following individual(s) shall be added to the Agreement as Indemnitor(s) and shall be bound by all of its terms for all Bonds issued pursuant to the Agreement, whether before or after the execution of this Amendment

   Principal Partners, L.C.
   _____
   _____
   _____

4. Pursuant to Paragraph SIXTEENTH of the Agreement, the addition to the Agreement of the Indemnitor named in Paragraph 3 above shall be effected by written amendment executed by such Indemnitor only.

IN WITNESS WHEREOF, we have signed and sealed this _17_ day of _May_, 20_04_.

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

WITNESS/ATTEST:

Principal Partners, L.C.                    (seal)
(Full Name of Indemnitor)

(Address of Indemnitor)
Tax ID or Social Security Number

By: _____          By: _Douglas K. Anderson_
   (Name, title)                        (Name)
                                     Its _Member_
                                        (title)

State of _Utah_
County of _Salt Lake_

On _May 17_ 20_04_ before me, _Susan N. Lockwood_, Notary Public, personally appeared (Name and title) _Douglas K. Anderson_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Susan N. Lockwood_                           (Seal)

NOTARY PUBLIC
Susan N. Lockwood
6260 So. 3000 E., Ste. 205
Salt Lake City, Utah 84121
Commission Expires
May 26, 2005
STATE OF UTAH

7300-Add Indemnitor to GAI

1.02

AMENDMENT # _1_ TO THE GENERAL AGREEMENT OF INDEMNITY

This Amendment shall be attached to and form part of the General Agreement of Indemnity (hereinafter "Agreement") by _____ in favor of the Surety, dated the _20_ day of October, 20_03_. It is hereby agreed that:

1. All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

2. This Amendment shall take effect and form part of the Agreement immediately upon execution.

3. The following individual(s) shall be added to the Agreement as Indemnitor(s) and shall be bound by all of its terms for all Bonds issued pursuant to the Agreement, whether before or after the execution of this Amendment

   Principal Partners, L.C.
   _____
   _____
   _____

4. Pursuant to Paragraph SIXTEENTH of the Agreement, the addition to the Agreement of the Indemnitor named in Paragraph 3 above shall be effected by written amendment executed by such Indemnitor only.

IN WITNESS WHEREOF, we have signed and sealed this _17_ day of May, 20_04_

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

WITNESS/ATTEST:

Principal Partners, L.C. (seal)
(Full Name of Indemnitor)
2150 South 1300 East, Suite 100
Salt Lake City UT 84106
(Address of Indemnitor)
Tax ID or Social Security Number 86-1087758

By: _____
(Name, title)

By: _____
(Name) Amir Etemadi

Its Member
(title)

State of Utah
County of Salt Lake

On May 17, 20_04_ before me, Susan N. Lockwood, Notary Public, personally appeared (Name and title) Amir Etemadi, Member personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature Susan N. Lockwood

(Seal)

NOTARY PUBLIC
Susan N. Lockwood
3380 So. 3000 E., Ste. 200
Salt Lake City, Utah 84121
Commission Expires
May 26, 2008
STATE OF UTAH

**AMENDMENT #_____TO THE GENERAL AGREEMENT OF INDEMNITY**

This Amendment shall be attached to and form part of the General Agreement of Indemnity made and entered into by <u>UPA Resort Construction LC; UPA California; UPCAL Construction Inc</u>, in favor of the Surety, dated the <u>20th</u> day of <u>October</u> , <u>2003</u> (hereinafter "Agreement"). It is hereby agreed that:

1.  All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

2.  This Amendment shall take effect and form part of the Agreement immediately upon execution.

3.  The following individual(s) and/or business entities shall be added to the Agreement as Indemnitor(s) and shall be bound by all of its terms for all Bonds issued pursuant to the Agreement, whether before or after the execution of this Amendment

    <u>Douglas K. Anderson</u>
    <u>Amir Etemadi</u>
    _____
    _____

4.  Pursuant to Paragraph SIXTEENTH of the Agreement, the addition to the Agreement of the Indemnitor named in Paragraph 3 above shall be effected by written amendment executed by such Indemnitor only.

IN WITNESS WHEREOF, we have signed and sealed this <u>5th</u> day of <u>December</u>, 20 <u>05</u>.

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

WITNESS/ATTEST:

|  |  |
|---|---|
|  | <u>Douglas K. Anderson</u>    (seal) |
|  | (Full Name of Indemnitor) |
|  |  |
|  | (Address of Indemnitor) |
|  | Tax ID or Social Security Number_____ |
| By:_____ | By:_____ |
| (Name, title) | (Name) |
|  |  |
|  | <u>Amir Etemadi</u>    (seal) |
|  | (Full Name of Indemnitor) |
|  |  |
|  | (Address of Indemnitor) |
|  | Tax ID or Social Security Number_____ |
| By:_____ | By:_____ |
| (Name, title) | (Name) |

**AMENDMENT #3 TO THE GENERAL AGREEMENT OF INDEMNITY**

This Amendment shall be attached to and form part of the General Agreement of Indemnity made and entered into by UPA Resort Construction, LC; UPA California; UPCAL Construction, Inc. in favor of the Surety, dated the October 20, 2003 and thereafter amended the May 17th, 2004 wherein Principal Partners, L.C. was added an Indemnitor and as thereafter amended from time to time (collectively, hereinafter the "Agreement"). It is hereby agreed that:

1. All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

2. The definition of Surety shall be deleted and replaced as follows:

   Liberty Mutual Insurance Company, Employers Insurance Company of Wausau (formerly "EMPLOYERS INSURANCE OF WAUSAU A Mutual Company"), Peerless Insurance Company, and any other company that is part of or added to the Liberty Mutual Group, severally not jointly, and for which Liberty Bond Services and/or Liberty Mutual Surety underwrites surety business (individually and collectively hereinafter called the "Surety").

3. The following individuals shall be added to the Agreement as Indemnitor(s) and shall be bound by all of its terms for all Bonds issued whether before or after the execution of this Amendment:

   Amako (U.S.), Inc.
   Amako Resort Construction California, Inc.
   Amako Resort Construction (U.S.), Inc.
   Amir Etemadi

4. Pursuant to Paragraph SIXTEENTH of the Agreement, the addition to the Agreement of the Indemnitor(s) named in Paragraphs 3 herein shall be effected by written amendment executed by such Indemnitor(s) only.

5. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any Indemnitor whose signature appears thereon and all of which together constitute one and the same instrument.

6. This Amendment shall take effect and form part of the Agreement immediately upon execution of the Indemnitor named therein.

IN WITNESS WHEREOF, we have signed and sealed this _5th_ day of _December_ / 200_5_ .

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

WITNESS/ATTEST:

|  | Amako (U.S.), Inc.                    (seal) |
|  | 13949 W. Colfax Ave. Suite 120 |
|  | Golden, Colorado 80401 |
|  | Tax ID Number_____ |
| By:_____ | By:_____ |
| Betty Ann Vivian, Controller | Amir Etemadi, President |

|  | Amako Resort Construction California, Inc.    (seal) |
|  | 13949 W. Colfax Ave. Suite 120 |
|  | Golden, Colorado 80401 |
|  | Tax ID Number_____ |
| By:_____ | By:_____ |
| , Controller | Amir Etemadi, President |

|  | Amako Resort Construction (U.S.), Inc.    (seal) |
|  | 13949 W. Colfax Ave. Suite 120 |
|  | Golden, Colorado 80401 |
|  | Tax ID Number_____ |
| By:_____ | By:_____ |
| , Controller | Amir Etemadi, President |

**Individual**

Amir Etemadi    SSN 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
1301 Wazee Street, Apt 2A
Denver, Colorado 80204

Witness: _____

_____    (Seal)
Amir Etemadi

**CORPORATE ACKNOWLEDGMENT**

STATE of Utah _____
ss.
County of Salt Lake,

On this 5th day of December, 20 0 5, before me personally appeared Amir    Etemadi, known to me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being me duly sworn, deposes and says that (s)he is the President of Amako Resort Construction (U.S.), Inc., a corporation; that (s)he knows the seal of said corporation; that the seal affixed is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

NOTARY PUBLIC
GUYANNE L. HANSEN
6360 SOUTH 3000 EAST #205
SALT LAKE CITY, UT 84121
MY COMMISSION EXPIRES
JUNE 22, 2007
STATE OF UTAH

_____
(Signature of Notary Public)

Notary Public, residing at Salt Lake City, Utah

(NOTARY SEAL)    My commission expires 6-22-07

**CORPORATE ACKNOWLEDGMENT**

STATE of Utah _____
ss.
County of Salt Lake,

On this 5th day of December, 20 0 5, before me personally appeared Amir Etemadi, known to me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being me duly sworn, deposes and says that (s)he is the President of Amako Resort Construction California, Inc., a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

Notary Public, residing at Salt Lake City, Utah

(NOTARY SEAL)    My commission expires 6-22-07

NOTARY PUBLIC
GUYANNE L. HANSEN
6360 SOUTH 3000 EAST #205
SALT LAKE CITY, UT 84121
MY COMMISSION EXPIRES
JUNE 22, 2007
STATE OF UTAH

7300-Add Indemnitor to GAI    1.02

**CORPORATE ACKNOWLEDGMENT**

STATE of __Utah__

County of __Salt Lake__    ss.

On this __5th__ day of __December__, 20 _05_, before me personally appeared __Amir    Etemadi__, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being by me duly sworn, deposes and says that (s)he is the __President__ of __Amako (U.S.), Inc.__, a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

Notary Public, residing at __Salt Lake City, Utah__

(NOTARY SEAL) My commission expires __6-22-07__

NOTARY PUBLIC
GUYANNE L. HANSEN
6360 SOUTH 3000 EAST #205
SALT LAKE CITY, UT 84121
MY COMMISSION EXPIRES
JUNE 22, 2007
STATE OF UTAH

**INDIVIDUAL ACKNOWLEDGMENT**

STATE of __Utah__

County of __Salt Lake__    ss.

On this __5TH__ day of __December__, 20 _05_, before me personally appeared __Amir Etemadi__, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

(NOTARY SEAL)

Notary Public, residing at __Salt Lake City, Utah__
My commission expires __6-22-07__

NOTARY PUBLIC
GUYANNE L. HANSEN
6360 SOUTH 3000 EAST #205
SALT LAKE CITY, UT 84121
MY COMMISSION EXPIRES
JUNE 22, 2007
STATE OF UTAH

7300-Add Indemnitor to GAI

1.02

# EXHIBIT TWO

# EXHIBIT TWO



## CAPITAL RETENTION AGREEMENT

This agreement made and entered into in favor of **Liberty Mutual Insurance Company, a** Massachusetts corporation, on behalf of itself and LM Insurance Corporation, an Iowa corporation; The First Liberty Insurance Corporation, an Iowa corporation; Liberty Mutual Fire Insurance Company, a Massachusetts corporation; Liberty Insurance Corporation, a Vermont corporation; and any other company that is part of or added to the Liberty Mutual Group for which surety business is underwritten by Liberty Bond Services, hereinafter called the "Surety" and executed by Anderson Corporation, UPA California, UPCAL Construction, Inc., UPA Resort Construction, L.C. and Amako Resort Construction, Inc. hereinafter called "Contractors", and Anderson Corporation, Douglas K . Anderson and Amir Etemadi hereinafter called "Owners".

**WHEREAS**, Contractors, in the transaction of its business and in the performance of contracts and in the fulfillment of obligations generally, individually, or jointly with others, may desire or may be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"); and

**WHEREAS**, at the special insistence and request of the undersigned, and upon the express condition that this instrument be executed, Surety has executed or procured the execution of, or may from time to time hereinafter execute or procure the execution of Bonds, but is not under any obligation to do so, nor are "Contractors" under obligation to procure Bonds from Surety.

**NOW, THEREFORE**, in consideration of the premises and the execution of any such Bond or Bonds and other valuable consideration, and as an inducement to such execution, we, the undersigned, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

**THE UNDERSIGNED AGREE** that the Tangible Net Worth (as defined below) of UPA California and UPA Resort Construction, L.C., combined, shall be, at a minimum, TWO MILLION FIVE HUNDRED THOUSAND U.S. DOLLARS ($2,500,000) from 12/31/02 forward, such terms to continue pursuant to this Agreement so long as there is any outstanding liability for any bonds. The intent of this agreement is to protect the financial condition of UPA California and UPA Resort Construction L.C. so as not to impair their ability to discharge their obligations under any bonds furnished by Surety.

**TANGIBLE NET WORTH** means, as of any applicable date of determination , the excess of (i) the net book value of all assets of UPA California and UPA Resort Construction, L.C., combined, as may be properly classified as such, excluding, intangible assets (copyrights, tradenames, goodwill, and other like intangibles), receivables from related parties, deferred tax assets, unapproved claims and change orders, and accounts receivables greater than 120 days past due, less (ii) the aggregate amount of all liabilities of UPA California and UPA Resort Construction, L.C., all of the foregoing as determined in accordance with GAAP.

**THE UNDERSIGNED FURTHER AGREES** that UPA California and UPA Resort Construction, L.C. shall not guarantee or become liable in any way as surety, endorser, guarantee or otherwise for, or pledge or hypothecate any assets for any liabilities or obligations of any other persons or entity.

**OWNERS AGREE** that in the event of breach of any of the terms of this agreement, all funds and the value of any property and any benefit received by Owners in connection with such breach shall be held in trust by Owners for the benefit of Surety to be paid by Owners to Surety on demand in reimbursement of its loss. Owners further agree to compensate Surety for any damage, in the form of loss or otherwise, sustained by it and caused or contributed to by such breach. Anderson Corporation and Amako Resort Construction, Inc. will have unlimited liability to compensate Surety for any loss, while Douglas K. Anderson and Amir Etemadi will have personal liability under this agreement limited to a maximum of ONE MILLION U.S. DOLLARS ($1,000,000) each.

**LOSS** means any and all damages, expenses and liabilities of whatever kind, including interest, court costs and attorney fees, which Surety may sustain or incur as a result of or in connection with any Bond, furnished by Surety.

**THIS AGREEMENT** shall apply to bonds executed and furnished by Surety and, where produced by Surety, to bonds executed by any other Surety as sole Surety or as a Co-Surety.

**THIS AGREEMENT** shall apply to bonds executed and furnished both before and after the effective date of this agreement and all alterations, renewals, extensions and modifications thereof.

**OWNERS AND CONTRACTORS AGREE** that Surety's rights under this Agreement are in addition to, and not in lieu of, any and all rights which Surety may have under other agreements, agreements of indemnity, or otherwise.

**OWNERS** reserve the right to terminate this agreement as a continuing inducement to Surety for furnishing of Bonds upon written notice of not less than Twenty (20) days to Surety at 450 Plymouth Rd., Suite 400, Plymouth Meeting, PA 19462-1644, whereupon the effect of this agreement shall be limited to bonds furnished before the effective date of the notice.

Executed this 30 day of Sept - 20 02.

ATTEST:
By: _____

WITNESS:
By: _____

Anderson Corporation
By: _____
Douglas K. Anderson, President

UPA California (Partnership)
By: _____
Douglas K. Anderson, President of
UPCAL Construction, Inc., General Partner

ATTEST:
By: _____

WITNESS:
By: _____

WITNESS:
By: _____

UPCAL Construction, Inc.
By: _____
Douglas K. Anderson, President

UPA Resort Construction, L.C.
By: _____
Douglas K. Anderson, Managing Member

By: _____
Douglas K. Anderson, Individually

ATTEST:
By: _____

WITNESS:
By: _____

Amako Resort Construction, Inc.
By: _____
Amir Etemadi, President

By: _____
Amir Etemadi, Individually

**CORPORATE ACKNOWLEDGMENT**

STATE of _Utah_ ss.

County of _Salt Lake_

On this _30th_ day of _September_, 20 _03_, before me personally appeared _Douglas K. Anderson_, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being by me duly sworn, deposes and says that (s)he is the _President_ of _Anderson Corp_, a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Elene V. Kontgis_
(Signature of Notary
Public)

ELENE V. KONTGIS
NOTARY PUBLIC - STATE OF UTAH
1132 South 800 West
Salt Lake City, UT 84101
My Comm. Exp. 07/10/2005
(NOTARY SEAL)

Notary Public, residing at _Salt Lake City, Utah_

My commission expires _7-10-05_

---

**CORPORATE ACKNOWLEDGMENT**

STATE of _Utah_ ss.

County of _Salt Lake_

On this _30th_ day of _September_, 20 _03_, before me personally appeared _Douglas K. Anderson_, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being by me duly sworn, deposes and says that (s)he is the _President of Const, Inc. General Partner_ of _UPA California Parts_, a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Elene V. Kontgis_
(Signature of Notary
Public)

ELENE V. KONTGIS
NOTARY PUBLIC - STATE OF UTAH
1132 South 800 West
Salt Lake City, UT 84101
My Comm. Exp. 07/10/2005
(NOTARY SEAL)

Notary Public, residing at _Salt Lake City, Utah_

My commission expires _7-10-05_

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of _Utah_ )
County of _Salt Lake_ ) ss:

On this _30th_ day of _September, 2003_ before me personally appeared _Douglas_ to me known and known to me to be the person who is described in and who executed the foregoing Agreement, and who being by me duly sworn, deposes and says that (s)he is the President of PSC Development Company, Manager of Evergreene Construction, LC, a limited liability company; and that (s)he executed the foregoing Agreement as the act and deed of the said limited liability company.

_____
(Signature of Notary Public)

Notary Public, residing at _____
My commission expires _____

## CORPORATE ACKNOWLEDGMENT

STATE of _Nevada_ ss.

County of _Washoe_

On this _26th_ day of _September_, 20 _0 3_, before me personally appeared _Amie Etemadi_, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being by me duly sworn, deposes and says that (s)he is the _President_ of _Amaka Resort Construction_, a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Janice A King_
(Signature of Notary
Public)

Notary Public, residing at, _445 S. Virginia St. Reno, Nevada_
(NOTARY SEAL) My commission expires _8/1/2007_



## INDIVIDUAL ACKNOWLEDGMENT

STATE of _Utah_ ss.

County of _Salt Lake_
On this _30th_ day of _September_, 20_03_, before me personally appeared _Douglas H. Anderson_, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

> ELENE V. KONTGIS
> NOTARY PUBLIC • STATE OF UTAH
> 1132 South 800 West
> Salt Lake City, UT 84101
> My Comm. Exp. 07/10/2008

(NOTARY SEAL)     My commission expires

_Elene V. Kontgis_
(Signature of Notary Public)

Notary Public, residing at _Salt Lake City, Ut_
_7·10·05_

## INDIVIDUAL ACKNOWLEDGMENT

STATE of _Nevada_ ss.

County of _Washoe_
On this _26th_ day of _September_, 20_03_, before me personally appeared _Amir Etemadi_, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Janice A Bive_
(Signature of Notary Public)

(NOTARY SEAL)     My commission expires
_8/1/2007_

Notary Public, residing at _245 S. Virginia St_
_Reno Nevada_





## CAPITAL RETENTION AGREEMENT

This agreement made and entered into in favor of **Liberty Mutual Insurance Company, a Massachusetts corporation, on behalf of itself and LM Insurance Corporation, an Iowa corporation; The First Liberty Insurance Corporation, an Iowa corporation; Liberty Mutual Fire Insurance Company, a Massachusetts corporation; Liberty Insurance Corporation, a Vermont corporation; and any other company that is part of or added to the Liberty Mutual Group for which surety business is underwritten by Liberty Bond Services,** hereinafter called the "Surety" and executed by Anderson Corporation, UPA California, UPCAL Construction, Inc. and UPA Resort Construction, L.C. and Amako Resort Construction, Inc. hereinafter called "Contractors", and Douglas K . Anderson and Amir Etemadi  hereinafter called "Owners".

**WHEREAS,** Contractors, in the transaction of its business and in the performance of contracts and in the fulfillment of obligations generally, individually, or jointly with others, may desire or may be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"); and

**WHEREAS,** at the special insistence and request of the undersigned, and upon the express condition that this instrument be executed, Surety has executed or procured the execution of, or may from time to time hereinafter execute or procure the execution of Bonds, but is not under any obligation to do so, nor are "Contractors" under obligation to procure Bonds from Surety.

**NOW, THEREFORE,** in consideration of the premises and the execution of any such Bond or Bonds and other valuable consideration, and as an inducement to such execution, we, the undersigned, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

**THE UNDERSIGNED AGREE** that the Tangible Net Worth (as defined below) of UPA California and UPA Resort Construction, L.C., combined, shall be, at a minimum, *ONE MILLION TWO HUNDRED THOUSAND U.S. DOLLARS ($1,200,000)* from 6/30/03 forward, such terms to continue pursuant to this Agreement so long as there is any outstanding liability for any bonds.  The intent of this agreement is to protect the financial condition of UPA California and UPA Resort Construction L.C. so as not to impair their ability to discharge their obligations under any bonds furnished by Surety.

**TANGIBLE NET WORTH** means, as of any applicable date of determination, the excess of (i) the net book value of all assets of UPA California and UPA Resort Construction, L.C., combined, as may be properly classified as such, excluding, intangible assets (copyrights, trade names, goodwill, and other like intangibles), receivables from related parties, deferred tax assets, unapproved claims and change orders, and accounts receivables greater than 120 days past due, less (ii) the aggregate amount of all liabilities of UPA California and UPA Resort Construction, L.C., all of the foregoing as determined in accordance with GAAP.

**THE UNDERSIGNED FURTHER AGREES** that UPA California and UPA Resort Construction, L.C. shall not guarantee or become liable in any way as surety, endorser, guarantee or otherwise for, or pledge or hypothecate any assets for any liabilities or obligations of any other persons or entity.

**OWNERS AGREE** that in the event of breach of any of the terms of this agreement, all funds and the value of any property and any benefit received by Owners in connection with such breach shall be held in trust by Owners for the benefit of Surety to be paid by Owners to Surety on demand in reimbursement of its loss.  Owners further agree to compensate Surety for any damage, in the form of loss or otherwise, sustained by it and caused or contributed to by such breach.  Anderson Corporation and Amako Resort Construction Inc. will have unlimited liability to compensate Surety for  any loss under this agreement, while Douglas K. Anderson and Amir Etemadi will have personal liability under this agreement  limited to a maximum of ONE MILLION U.S. DOLLARS ($1,000,000).

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of _____ )
                              ) ss:
County of _____ )

ANITA B. TAYLOR
NOTARY PUBLIC - STATE OF UTAH
2150 SOUTH 1300 EAST, STE. 100
SALT LAKE CITY, UT 84106
My Comm. Exp. 07/14/2007

On this _____ day of _____, _____, before me personally appeared Doug Anderson, Manager UPA Resort Const LLC, to me known and known to me to be the person who is described in and who executed the foregoing Agreement, and who being by me duly sworn, deposes and says that (s)he is the Manager of UPA Resort Construction L.L.C. , a limited liability company, and that (s)he executed the foregoing Agreement as the act and deed of the said limited liability company.

_____
(Signature of Notary Public)

Notary Public, residing at _____
My commission expires _____


## INDIVIDUAL ACKNOWLEDGMENT

STATE of _____
                              ss.
County of _____

On this __14__ day of _____, 20___, before    me    personally    appeared _____ Douglas Anderson_____, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

(NOTARY SEAL)          My commission expires

Notary Public, residing at _____



ANITA B. TAYLOR
NOTARY PUBLIC - STATE OF UTAH
2150 SOUTH 1300 EAST, STE. 100
SALT LAKE CITY, UT 84106
My Comm. Exp. 07/14/2007

# INDIVIDUAL ACKNOWLEDGMENT

STATE of _Utah_

County of _Salt Lake_                                    ss.

On this _15th_ day of _October_ , 20 _03_, before    me    personally    appeared
_____Amir Etemadi_____, known by me to be the person who is identified in
and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and
says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first
above written.

ELENE V. KONTGIS
NOTARY PUBLIC - STATE OF UTAH
1132 South 500 West
Salt Lake City, UT 84101
My Comm. Exp. 07/10/2006

_Elene V. Kontgis_
(Signature of Notary Public)

Notary Public, residing at _SLC, Utah_

(NOTARY SEAL)        My commission expires
_7-10-03_

**LOSS** means any and all damages, expenses and liabilities of whatever kind, including interest, court costs and attorney fees, which Surety may sustain or incur as a result of or in connection with any Bond, furnished by Surety.

**THIS AGREEMENT** shall apply to bonds executed and furnished by Surety and, where produced by Surety, to bonds executed by any other Surety as sole Surety or as a Co-Surety.

**THIS AGREEMENT** shall apply to bonds executed and furnished both before and after the effective date of this agreement and all alterations, renewals, extensions and modifications thereof.

**OWNERS AND CONTRACTORS AGREE** that Surety's rights under this Agreement are in addition to, and not in lieu of, any and all rights which Surety may have under other agreements, agreements of indemnity, or otherwise.

**OWNERS** reserve the right to terminate this agreement as a continuing inducement to Surety for furnishing of Bonds upon written notice of not less than Twenty (20) days to Surety at 450 Plymouth Rd., Suite 400, Plymouth Meeting, PA 19462-1644, whereupon the effect of this agreement shall be limited to bonds furnished before the effective date of the notice.

Executed this _15_ day of _Sept_ , 20_03_ .

**ATTEST:**                                   Anderson Corporation

By: _____        By: _____
                                                    Douglas K. Anderson, President

**WITNESS:**                                 UPA California (Partnership)

By: _____        By: _____
                                                    Douglas K. Anderson, President of
                                                    UPCAL Construction, Inc., General Partner

**ATTEST:**                                   UPCAL Construction, Inc.

By: _____        By: _____
                                                    Douglas K. Anderson, President

**WITNESS:**                                 UPA Resort Construction, L.C.

By: _____        By: _____
                                                    Douglas K. Anderson, Managing Member

**WITNESS:**

By: _____        By: _____
                                                    Douglas K. Anderson, Individually

**WITNESS:**                                 Amako Resort Construction, Inc.

By: _____        By: _____
                                                    Amir Etemadi, President

**WITNESS:**

By: _____        By: _____
                                                    Amir Etemadi, Individually

**CORPORATE ACKNOWLEDGMENT**

STATE of ___Utah___

County of ___Salt Lake___                    ss.

On this __14__ day of __October__ , 20 _03_ , before me personally appeared ___
_____Douglas Anderson, President Anderson Corp_____ , known by me to be the person who is
identified in and who executed the foregoing General Agreement of Indemnity; and who being by me duly
sworn, deposes and says that (s)he is the _____ of _____
_____ , a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said
Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said
corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above
written.

ANITA B. TAYLOR
NOTARY PUBLIC · STATE OF UTAH
2150 SOUTH 1300 EAST STE. 100
SALT LAKE CITY, UT 84109
My Comm. Exp. 07/14/2007

Public)                                    _____
                                           (Signature    of    Notary

                    Notary Public, residing at ___Salt Lake City, UT___

(NOTARY SEAL)       My commission expires ___7-14-2007___


**CORPORATE ACKNOWLEDGMENT**

STATE of ___Utah___

County of ___Salt Lake___                    ss.

On this __15th__ day of __October__ , 20 _03_ , before me personally appeared
___Amir Etemadi, President Amako resort Construction Inc.___ , known by me to be the
person who is identified in and who executed the foregoing General Agreement of Indemnity; and who being
by me duly sworn, deposes and says that (s)he is the __President__ of __Amako Resort__
__Const, Inc__ , a corporation; that (s)he knows the seal of said corporation; that the seal affixed to said
Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said
corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above
written.

_____Elene V. Kontgis_____

Public)                                    _____
                                           (Signature    of    Notary

                    Notary Public, residing at ___Salt Lake City, Utah___

(NOTARY SEAL)       My commission expires ___7·10·05___



ELENE V. KONTGIS
NOTARY PUBLIC · STATE OF UTAH
1132 South 500 West
Salt Lake City, UT 84101
My Comm. Exp. 07/10/2005

# EXHIBIT THREE

# EXHIBIT THREE



 **Liberty Mutual**

**Liberty Mutual Surety**

**Paul A. Seegers**
Surety Acct. Engr. Mgr. II

Interchange Corporate Center
450 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462-1644
paul.seegers@libertymutual.com
Phone: 610-834-7170
Fax:    610-832-8124

September 18, 2007

Mr. Douglas K. Anderson, President
UPCAL Construction, Inc. Partner
UPA California
445 S. Virginia Street
Reno, Nevada 89501

Douglas K. Anderson, President
Anderson Corporation
2150 South 1300 East Suite 100
Salt Lake City, Utah 84106

Mr. Douglas K. Anderson, President
Anderson Canada Corp.
2150 South 1300 East Suite 100
Salt Lake City, Utah 84106

Mr. Amir Etemadi, President
ETY Holdings LTD
300-1000 West 3rd
North Vancouver BC Canada
V7P3J6

Mr. Amir Etemadi, Individually
1301 Wazee Street, Apt. A
Denver, Colorado 80204

Mr. Douglas K. Anderson, Pres.
Anderson Corporation, Partner
UPA Resorts Construction LC
421 West 12300 South #400
Salt Lake City, Utah 84020

Mr. Amir Etemadi, President
Amako Construction LTD
300-1000 West 3rd
North Vancouver BC Canada V7P3J6

Mr. Amir Etemadi, President
Amako Resort Construction LTD
300-1000 West 3rd
North Vancouver BC Canada V7P3J6

Mr. Amir Etemadi, President
Amako Resorts Const. CA, Inc.
13949 W. Colfax Ave, Suite 120
Golden, Colorado 80401

Mr. Douglas K. Anderson, Individually
2150 South 1300 East Suite 100
Salt Lake City, Utah 84106

Mr. Douglas K. Anderson, Pres.
UPCAL Construction, Inc.
421 West 12300 South #400
Salt Lake City, Utah 84020

Mr. Amir Etemadi, President
Amako (U.S.), Inc.
13949 W. Colfax Avenue, Suite 120
Golden, Colorado 80401

Mr. Amir Etemadi, Member
Principal Partners, L.C.
2150 South 1300 East, Suite 100
Salt Lake City, Utah 84106

Mr. Amir Etemadi, President
Amako Resorts Const (U.S), Inc.
13949 W. Colfax Avenue, Suite 120
Golden, Colorado 80401

RE:    Principal:    UPA California
       Obligee:     Olsen 737 - Oakland 1, LLC
       Project:     T-10, City Walk at Oakland

Gentlemen:

As you are aware, Liberty Mutual Insurance Company, hereinafter refered to as Surety, issued payment and performance bond number 965 005 646 dated May 20, 2005 for UPA California (UPA) with regard to a project titled T-10, City Walk Condominiums, Oakland, CA. Surety has recently been notified by Olsen 737 – Oakland 1, LLC, as Obligee under bond, that they have declared UPA to be in default of its contract with Obligee, and demand is being made upon Surety, as the performance bond surety, to arrange for the completion of such contract or cure a default. In addition, Surety has received notices of claims for payment

**Member of Liberty Mutual Group**

September 17, 2007
Page 2 of 2

from several subcontractors and suppliers of UPA on such project for which recovery is being sought for monies claimed to be due to them for work performed at or materials delivered to such project.

Surety has also issued payment and performance bonds for a project titled Curry Village Employee Housing, Yosemite National Park, bond number 965 005 662 in the amount of $16,985,700 each. Surety has received claim notices on the payment bond issued from several subcontractors and suppliers.

As a result of these matters, Surety is being exposed to the possibility of substantial losses under its bonds furnished for the projects and has commenced an investigation.

The above captioned bonds were issued at the request of one or more of the Indemnitors and/or Principals listed on the General Agreement of Indemnity (GAI) dated October 20, 2003 and Amendment dated May 17, 2004, and two Amendments dated December 5, 2005 and the GAI dated November 2, 2004. Among other things, the signatories to the GAI and Amendments agreed to exonerate, indemnify and keep indemnified Surety from and against all claims, losses, liability, costs, fees, and expenses Surety may sustain or incur by having executed such bonds. A copy of the GAI is enclosed for your convenience.

We must now demand that each of you, as Indemnitors and/or Principals, take action to meet their obligation to Surety for exposure under the bonds. Surety has received notices of payment bond claims in the amount of $7,745,687 to date on the T-10 project and $245,371 on the Curry Village project. We anticipate receiving additional claims. We look to the Indemnitors to holdharmless Liberty Mutual for any and all claims, losses, liability, costs, fees, and expenses. Please respond to this letter by contacting the undersigned on or before September 28, 2007 to arrange a meeting to discuss how the Indemnitors plan on meeting this obligation.

Sincerely,

/ S /

Paul A. Seegers
Liberty Mutual Insurance Co.

cc:     William Misero, Liberty Mutual Insurance Company
        Richard Maxey, Liberty Mutual Insurance Company
        James D. Curran, Esquire

Liberty Mutual Surety

# EXHIBIT FOUR

# EXHIBIT FOUR



 **Liberty Mutual**

Liberty Mutual **Surety**

Paul A. Seegers
Surety Acct. Engr. Mgr. II

Interchange Corporate Center
450 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462-1644
paul.seegers@libertymutual.com
Phone: 610-834-7170
Fax:    610-832-8124

September 18, 2007

Mr. Douglas K. Anderson, President
Anderson Corporation
2150 South 1300 East Suite 100
Salt Lake City, Utah 80401

Mr. Douglas K. Anderson, President of
UPCAL Construction, Inc., General Partner
UPA California (Partnership)
2150 South 1300 East Suite 100
Salt Lake City, Utah 80401

Mr. Douglas K. Anderson, President
UPCAL Construction, Inc.
2150 South 1300 East Suite 100
Salt Lake City, Utah 80401

Mr. Douglas K. Anderson, President
UPA Resort Construction, L.C.
2150 South 1300 East Suite 100
Salt Lake City, Utah 80401

Mr. Douglas K. Anderson, Individually
2150 South 1300 East Suite 100
Salt Lake City, Utah 80401

Mr. Amir Etemadi, President
Amako Resort Construction, Inc.
300-1000 West 3rd Street
North Vancouver BC Canada V7P3J6

Mr. Amir Etemadi, Individually
1301 Wazee Street, Apt. A
Denver, Colorado 80402

RE:    Obligee:      Olsen 737, Oakland 1, LLC
       Project:      T-10 City Walk Condominiums
       Principal:    UPA California

### Demand on Capital Retention Agreement

Gentlemen:

As you are aware, Liberty Mutual Insurance Company, hereinafter refered to as Surety, issued payment and performance bond number 965 005 646 dated May 20, 2005 for UPA California (UPA) with regard to a project titled T-10, City Walk Condominiums, Oakland, CA. Surety has recently been notified by Olsen 737 – Oakland 1, LLC, as Obligee under bond, that they have declared UPA to be in default of its contract with Obligee, and demand is being made upon Surety, as the performance bond surety, to arrange for the completion of such contract or cure a default. In addition, Surety has received notices of claims for payment from several subcontractors and suppliers of UPA on such project for which recovery is being sought for monies claimed to be due to them for work performed at or materials delivered to such project.

As you are aware on September 15, 2003, you executed a Capital Retention Agreement, hereinafter referred to as Agreement, in favor of Liberty Mutual Insurance Co., L M Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Corporation and any other company that is part of or added to the

**Member of Liberty Mutual Group**

September 18, 2007
Page 2 of 2

Liberty Mutual Group, collectively referred to as Liberty. The Agreement, among other things, requires that the combined Tangible Net Worth of UPA California and UPA Resorts Construction L.C. shall be, at a minimum, $1,200,000 from June 30, 2003 forward. As a result of the developments in Oakland, we question whether this minimum threshold is currently being met.

Liberty hereby demands that the Owners and Contractors provide information to Liberty's satisfaction showing that the minimum threshold is being met. We also demand that any and all funds as defined in the Agreement be held in trust for the benefit of Liberty if a breach of the Agreement has occurred. For the purposes of discussing the Owners and Contractors obligations, we ask that you contract the undersigned to arrange a meeting of all parties. If we do not hear from you by September 28, 2007 we will assume that a breach has occurred and take any necessary steps to protect Liberty's interests.

Sincerely,

/ S /

Paul A. Seegers
Liberty Mutual Insurance Co.

CC:    William Misero, Liberty Mutual Ins.
       Richard Maxey, Liberty Mutual Ins.
       William Hartnett, Liberty Mutual Ins.

Liberty Mutual Surety